DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Crown Equipment Corporation, | ) | |
| | ) | CASE NO. 3:04 CV 7051 |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Toyota Material Handling, U.S.A., Inc., | ) | |
| | ) | (Resolving Doc. No. 62 and 103) |
| Defendant(s). | ) | |
| | ) | |
| | ) | |

Before the Court is plaintiff Crown Equipment Corporation's ("Crown" or "plaintiff")

motion for partial summary judgment as to breach of its dealer agreement by non-party Florida

Lift Systems, Inc. ("Florida Lift").  (Doc. No. 62).  Plaintiff argues that the question of Florida

Lift's breach, which is an element of plaintiff's tortious interference claim against defendant

Toyota Material Handling, U.S.A., Inc. ("Toyota" or "defendant"),[1] has already been litigated in

plaintiff's favor and that defendant is collaterally estopped from re-litigating it here.  Toyota has

filed a response to the motion (Doc. No. 73) and Crown has filed a reply (Doc. No. 75).  The

briefs are supported by appendices which have been filed under seal.  (Doc. Nos. 65, 76).[2]

## I.  PROCEDURAL BACKGROUND

On February 4, 2004, Crown filed this lawsuit against Toyota.  The case was transferred

to the docket of the undersigned on January 6, 2005.  This Court subsequently ruled on several

---

[1]  The tortious interference claim is the only claim remaining in the lawsuit.  The parties have also filed cross-motions for summary judgment with respect to this claim.  (Doc. Nos. 82, 88).

[2]  Plaintiff has also filed a motion for leave to supplement its motion for partial summary judgment.  (Doc. No. 103).  That motion is granted.

(3:04 CV 7051)

matters, with the result that all of defendant's counterclaims were dismissed and all that remained was plaintiff's claim of tortious interference with contract.

The Court established a Case Management Plan which would have had discovery completed by July 1, 2005 and summary judgment motions filed on July 15, 2005.  One month before the dispositive motions deadline, the parties sought an extension of the entire schedule due to discovery delays.  The Court granted this motion and then, three days later, was surprised by the filing of plaintiff's motion for partial summary judgment, even though, under the new schedule just set at the parties' request, discovery was not complete and it was five weeks before dispositive motions were due.  The Court's law clerk e-mailed plaintiff's counsel with a caution regarding this Court's distaste for "rolling" summary judgment motions and suggested that plaintiff might wish to withdraw its motion rather than being foreclosed from filing a second motion on the full merits of the case.  The parties then filed a joint motion seeking leave to separately brief the question of breach of the dealer agreement (the issue addressed in the motion for partial summary judgment), followed by additional cross-motions for summary judgment on the tortious interference claim.  Reluctantly, the Court granted the motion, stating its concern that all of these matters could not be timely resolved before the November trial date and, in any event, making no promise to resolve the motion for partial summary judgment before the other motions would be due.  The trial date was extended by two weeks and the Court noted that the case would be tried "on the clock."[3]

_____

[3] The case remains set for trial on a standby basis during the two-week period beginning November 28, 2005.

2

(3:04 CV 7051)

Subsequent delays have resulted in the very circumstance which the Court predicted, namely, that the instant motion would not be resolved before the regular dispositive motions were filed.  Now the Court has several dispositive motions on its plate, rather than just one.  Even so, out of respect for pending matters in other cases on its docket, the Court will adhere to the original plan to resolve the motion for partial summary judgment first.  If there is time prior to trial, the Court will resolve the cross-motions on the merits but, as before, makes no guarantees.  The trial will proceed "on the clock" during the two-week period beginning November 28, 2005, whether or not these remaining motions are resolved.  Of course, the parties are always free to settle their differences through extra-judicial means and timely inform the Court.

## II.  DISCUSSION

### A.  Factual Background

The Court has set forth the factual background in a previous Order as follows:

> This action is based on a fairly simple set of facts.  Plaintiff, a manufacturer of Class I through III lift trucks, distributes those lift trucks through independent dealers and company-owned branches.  (Compl. ¶ 1).  Defendant competes with plaintiff for sales of lift trucks.  (Answer ¶ 2).  Plaintiff had a Dealer Agreement with Florida Lift Systems, Inc. ("Florida Lift") under which Florida Lift was plaintiff's authorized dealer in 20 counties in central Florida, including the Orlando area and the Tampa area.  (Compl. ¶¶ 7,10; Answer ¶¶ 7, 10).  Under the Agreement, Florida Lift was required to obtain plaintiff's written permission before entering into a similar relationship with any competitor of plaintiff.  (Compl. ¶¶ 8-9).  Plaintiff alleges that defendant tortiously induced Florida Lift to breach its Agreement with plaintiff by entering into a relationship with defendant which encompassed the Tampa area, without plaintiff's prior written permission.  (Compl. ¶¶ 11-14).  As a result of the breach, plaintiff gave notice to Florida Lift that it intended to terminate their relationship and it also filed a lawsuit in the Southern District of Ohio seeking to compel arbitration of any dispute relating to the anticipated termination of the Agreement.  (Compl. ¶

3

(3:04 CV 7051)

> 17).  Rather than cure its breach, Florida Lift joined forces with defendant, which agreed to pay all of Florida Lift's litigation costs if Florida Lift would continue its relationship with defendant.  (Compl. ¶¶ 19-21).  Plaintiff terminated its relationship with Florida Lift.  An arbitrator eventually concluded that plaintiff was justified in doing so.  This decision was confirmed by Order of U.S. District Judge Walter H. Rice entered on March 9, 2005 in <u>Crown Equipment Corp. v. Florida Lift Systems Inc.</u>, No. 3:04cv0007 (S.D. Ohio).

(Doc. No. 42, at 3-4, footnote omitted).  The amended complaint alleges that defendant's actions with respect to Florida Lift which led to the termination of plaintiff's Dealer Agreement with Florida Lift constituted tortious interference with contract.

**B.  Analysis of Plaintiff's Motion for Partial Summary Judgment (Doc. No. 62)**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 .  The Rule requires the nonmoving party who has the burden of proof at trial to oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]"  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).  Further, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'"  <u>Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1477 (6th Cir. 1989) (quoting <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 252 (1986)).  In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  <u>Anderson v. Liberty Lobby</u>, 477 U.S. at 250.  Put another way, this Court must determine "whether the evidence presents a sufficient disagreement to

4

(3:04 CV 7051)

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. See also Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 578 (6th Cir. 2003) ("[t]he conflicting proof and the inferences that can be drawn therefrom raise genuine issues of material fact that preclude the grant of summary judgment").

The only remaining claim for adjudication in this case is a claim of tortious interference with contract. Crown asserts that Toyota induced Florida Lift to enter into a new agreement to represent defendant's product line in the Tampa, Florida market absent Crown's prior approval. Under Florida Lift's dealer agreement with Crown this constituted a breach. Crown asserts in this lawsuit that Toyota's inducement of Florida Lift amounted to tortious interference with a contract.

One element which plaintiff must prove to prevail on its tortious interference with contract claim is that Toyota procured a breach of contract by Florida Lift. In its motion for partial summary judgment, plaintiff asserts that the issue of Florida Lift's breach has already been adjudicated in plaintiff's favor by both an arbitrator and the U.S. District Court for the Southern District of Ohio ("SDOH case") and, therefore, defendant is estopped from arguing that Florida Lift did not breach the dealer agreement. Defendant argues that it is not estopped from litigating the question of Florida Lift's breach of the dealer agreement because it was not a party to the SDOH case between Crown and Florida Lift. The Court finds no merit in defendant's argument.

Collateral estoppel requires four elements:

      1)    the issue precluded must be the same one involved in the prior proceeding;

5

(3:04 CV 7051)

> 2)      the issue must actually have been litigated in the prior proceeding;
>
> 3)      determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; and
>
> 4)      the prior forum must have provided the party against whom estoppel is asserted a full and fair opportunity to litigate the issue.

Central Transp., Inc. v. Four Phase Sys., Inc., 936 F.2d 256, 259 (6th Cir. 1991).

That the plaintiff has established the first three elements cannot be disputed. In the SDOH case, Crown sought to enforce the arbitration clause in its dealer agreement with Florida Lift. Florida Lift resisted and moved for injunctive relief. Following a three-day hearing, U.S. District Judge Walter Rice denied the injunctive relief, finding that Florida Lift was unlikely to prevail in its dual assertion that it had not breached the dealer agreement and that Crown had no right to terminate the agreement. Judge Rice compelled arbitration[4] and the arbitrator ultimately found in Crown's favor, determining that Florida Lift had breached the dealer agreement by entering into a new agreement with Toyota without obtaining Crown's prior approval and that Crown was entitled to terminate the agreement. This arbitration award was confirmed by Judge Rice. The confirmed award has the force and effect of law. 9 U.S.C. § 13 ("The judgment so entered [by an arbitrator] shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered.").

Toyota argues that the fourth element has not been satisfied because it was not a party to the SDOH case and, therefore, had no full and fair opportunity to litigate the issue on its own

---

[4] The parties agreed on the arbitrator.

(3:04 CV 7051)

behalf. However, "[c]ollateral estoppel applies to those parties in privity with the named party."

Central Transp., 936 F.2d at 260 n.2 (citing Montana v. United States, 440 U.S. 147, 153

(1979)). The voluminous records supplied by the parties prove that Toyota and Florida Lift were

in complete privity with respect to the SDOH case. Crown has collected this evidence in great

detail at pages 11 through 15 of its motion. The following are merely examples of the evidence

available to show privity.

First, Toyota funded Florida Lift's litigation with Crown in the SDOH case, including the

arbitration.[5] See Doc. No. 65, Exh. B, pp. 180-182;[6] Exh. D., p. 208;[7] Exh. I, ¶ 63;[8] Doc. No. 47,

¶ 21.[9]

Second, Toyota and Florida Lift shared the same counsel, apparently without any conflict

of interest. Toyota provided Florida Lift with advice regarding legal strategy in the SDOH case.

---

[5] Toyota's total payments on behalf of Florida Lift exceed $1.4 million, as of a May 20, 2005 summary of fees and expenses. (Doc. No. 65, Exh. G; Exh. H [Roensch Dep.] pp. 71, 75).

[6] At a July 1, 2004 hearing in the SDOH case regarding Florida Lift's request for an injunction, Mr. Bode, who represented Florida Lift in that case and represents defendant in the instant case, questioned Rodney J. Roensch, general counsel for Toyota Material Handling, USA, Inc., about this issue. Mr. Roensch testified that he recommended that Toyota provide financial support to Florida Lift for the SDOH litigation for a couple reasons, one of which was "that if Crown terminated Florida Lift Systems we [Toyota] would not have a viable dealer in the Tampa or Orlando area. They [Florida Lift] would fold and we would have no representation with the investment that we have put into the areas. So it was a method to protect our interests." (Doc. No. 65, Exh. B., at 181).

[7] At an arbitration hearing on October 18, 2004, J. Jeffrey Fischer, the owner of Florida Lift, testified that he entered into a Joint Defense Agreement with Toyota on January 13, 2004. The agreement was signed by Fischer and Roensch. (Doc. No. 65, Exh. D. at 208).

[8] The arbitrator made a fact-finding that Toyota was funding Florida Lift's costs in the SDOH litigation between Crown and Florida Lift, including the arbitration costs. (Doc. No. 65, Exh. I, ¶ 63).

[9] In its Answer to the Second Amended Complaint in this action, Toyota admitted "that it offered Florida Lift financial support so that Florida Lift would not be financially overwhelmed by litigation costs incurred due to the lawsuit filed by Crown [and] . . . that Florida lift (sic) accepted this offer of financial assistance and that [Toyota] has paid litigation costs on the behalf of Florida Lift. . . ." (Doc. No. 47, ¶ 21).

(3:04 CV 7051)

Toyota's general counsel reviewed and approved documents before they were filed by Florida Lift.  Toyota exercised control over the retention of experts.  Toyota and Florida Lift even entered into a Joint Defense Agreement.[10]  This all suggests that their interests are aligned.  See Doc. No. 65, Exh. B, pp. 172-76; Exh. H., pp. 104-05 and 219; Exh. L and attachments.

Third, in the SDOH case, Toyota was deemed a necessary party to any settlement discussions between Crown and Florida Lift.  See Doc. No. 65, Exh. L. and attachments.

Finally, Toyota explicitly communicated to Crown that its dispute with Florida Lift was a dispute with Toyota.  See Doc. No. 65, Exh. L., Att. 4 and 12.

It is clear that Toyota's interests were aligned with those of Florida Lift in the SDOH case and that Toyota had more than enough opportunity to protect its interests.

Therefore, the legal conclusion in the SDOH case that Florida Lift did breach its dealer agreement with Crown is applicable in this case and Toyota is collaterally estopped from re-litigating that issue here.

### III.  CONCLUSION

For the reasons discussed above, plaintiff's motion for partial summary judgment on the question of whether Florida Lift breached is dealer agreement (Doc. No. 62, as amended by No. 103) is granted.  For purposes of Crown's tortious interference claim against Toyota, that element will be deemed established.

---

[10]  On the very first page of this Joint Defense Agreement, it states: "The undersigned believe that there is a mutuality of interest in a common and joint effort related to the Litigation [the SDOH case] and any subsequent proceeding relating thereto."  (Doc. No. 65, Exh. L, Att. 1, at I).

(3:04 CV 7051)

### IV.  SUBSEQUENT PROCEEDINGS

This Memorandum Opinion and Order resolves only Doc. No. 62 (and No. 103).  The cross-motions for summary judgment on the tortious interference claim (Doc. Nos. 82 and 88) remain pending.  The Court will attempt to resolve them prior to the November 28 trial date. However, counsel are also urged to attempt to resolve this matter on their own short of trial and, if they do resolve it, they should notify the Court promptly.

IT IS SO ORDERED.


   October 3, 2005                       *s/ David D. Dowd, Jr.*       
Date                                     David D. Dowd, Jr.
                                      U.S. District Judge

9