DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Crown Equipment Corporation, | ) | |
| | ) | CASE NO. 3:04 CV 7051 |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | <u>MEMORANDUM OPINION</u> |
| | ) | |
| Toyota Material Handling, U.S.A., Inc., | ) | |
| | ) | |
| Defendant(s). | ) | |
| | ) | |
| | ) | |

Before the Court are cross-motions for summary judgment on the sole remaining claim of tortious interference with contract. For the reasons set forth below, plaintiff's motion (Doc. No. 82) is denied and defendant's motion (Doc. No. 88) is granted.

## **I. BACKGROUND**

The Court has set forth the factual background on another occasion as follows:

> This action is based on a fairly simple set of facts. Plaintiff, a manufacturer of Class I through III lift trucks, distributes those lift trucks through independent dealers and company-owned branches. Defendant competes with plaintiff for sales of lift trucks. Plaintiff had a Dealer Agreement with Florida Lift Systems, Inc. ("Florida Lift") under which Florida Lift was plaintiff's authorized dealer in 20 counties in central Florida, including the Orlando area and the Tampa area. Under the Agreement, Florida Lift was required to obtain plaintiff's written permission before entering into a similar relationship with any competitor of plaintiff. Plaintiff alleges that defendant tortiously induced Florida Lift to breach its Agreement with plaintiff by entering into a relationship with defendant which encompassed the Tampa area, without plaintiff's prior written permission. As a result of the breach, plaintiff gave notice to Florida Lift that it intended to terminate their relationship and it also filed a lawsuit in the Southern District of Ohio seeking to compel arbitration of any dispute relating to the anticipated

(3:04 CV 7051)

>termination of the Agreement. Rather than cure its breach, Florida Lift joined forces with defendant, which agreed to pay all of Florida Lift's litigation costs if Florida Lift would continue its relationship with defendant. Plaintiff terminated its relationship with Florida Lift. An arbitrator eventually concluded that plaintiff was justified in doing so. This decision was confirmed by Order of U.S. District Judge Walter H. Rice entered on March 9, 2005 in Crown Equipment Corp. v. Florida Lift Systems Inc., No. 3:04cv0007 (S.D. Ohio).

(Doc. No. 42, at 3-4, footnote and internal references omitted).

On October 3, 2005, this Court ruled that defendant was collaterally estopped from re-litigating the question of whether Florida Lift had breached the Dealer Agreement that it had with Crown. See Doc. No. 108.

Now before this Court is plaintiff's assertion that defendant's actions with respect to Florida Lift which led to the termination of plaintiff's Dealer Agreement with Florida Lift constituted tortious interference with contract.

## II.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 . When considering a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion." U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962). However, the adverse party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); see also Celotex Corp. v.

(3:04 CV 7051)

Catrett, 477 U.S. 317, 324 (1986). Further, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1477 (6th Cir. 1989) (quoting Anderson v. Liberty Lobby, 477 U.S. at 252).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, 477 U.S. at 250.

**B. Analysis**

Crown Equipment Corporation ("Crown") alleges that Toyota Material Handling U.S.A., Inc. ("Toyota") tortiously interfered with a Dealer Agreement which Crown had with Florida Lift. This is the only issue remaining before the Court.

**1. The Dealer Agreement** [1]

The contract between Crown and Florida Lift required Florida Lift to refrain from acting as a dealer or agent for any competitor of Crown "without prior written approval of Crown[.]" (Doc. No. 82-3, ¶ 3(bb)).

The Dealer Agreement also provided the means by which the parties could terminate the agreement. Florida Lift was permitted to terminate "at any time, with or without cause, by

---

[1] A copy of the agreement is attached as Exh. A to the Declaration of D. Jeffrey Ireland. (Doc. No. 82-2; 82-3).

3

(3:04 CV 7051)

giving written notice of such termination to Crown specifying the effective date thereof, which date shall not be less than 30 days after receipt of such notice by Crown." (Doc. No. 82-3, ¶ 19(a)). Crown, on the other hand, could terminate only in the event of the occurrence of any of several events, including, inter alia:

> (5) failure by Dealer [Florida Lift] to honor any promise on Dealer's part contained in this agreement . . . after Dealer shall have been notified by Crown of such failure and in Crown's unrestricted judgment shall have failed to correct the same within 60 days after receipt of such notice[.]

(Doc. No. 82-3, ¶ 19(b)(5)).

In this case is it undisputed that Florida Lift entered into a relationship with Toyota to distribute Toyota vehicles in the Tampa, Florida region without first obtaining the approval of Crown. This constituted a breach of the Dealer Agreement between Crown and Florida Lift.[2] By letter dated January 12, 2004, Crown informed Florida Lift that it was in breach and had 60 days to cure the breach or suffer termination of the Dealer Agreement. Florida Lift chose not to cure the breach and Crown terminated the Dealer Agreement.[3]

---

[2] This conclusion was reached by both an arbitrator and the United States District Court for the Southern District of Ohio in a lawsuit filed there by Crown against Florida Lift. See Crown Equipment Corporation v. Florida Lift Systems, Inc., Case No. 3:04-CV-007 (Rice, J.). This Court has determined that the ruling of that district court is binding on the defendant in the instant action. See Doc. No. 108.

[3] The Southern District of Ohio has already decided that Florida Lift's breach justified Crown's termination of the Dealer Agreement.

(3:04 CV 7051)

### 2. The Elements of Tortious Interference

"The tort of tortious interference with a contractual relationship is recognized in Ohio." Kenty v. Transamerica Premium Ins. Co., 650 N.E.2d 853 (Ohio 1995) Syllabus ¶ 1.[4] "In order to recover for a claim of intentional interference with a contract, one must prove (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." Id. Syllabus ¶ 2 and 866 (adopting Restatement (Second) of Torts § 766).[5]

Defendant argues that, although there is no doubt as to the first element, the existence of a contract between Crown and Florida Lift (i.e., the Dealer Agreement), plaintiff cannot establish the second, third and fourth elements of a tortious interference claim, namely, that defendant had knowledge of the contract, that defendant intentionally procured the contract's breach, and that defendant's contacts with Florida Lift were improper, that is, lacking in justification.

### a. Knowledge of the Contract

Toyota asserts here that, although it presumed Florida Lift and Crown had some sort of dealer agreement because that practice was standard in the industry, it had no specific knowledge

---

[4] The parties are in agreement that Ohio law governs this conflict and the Court is also now satisfied that this is so. See Doc. No. 111.

[5] Section 766 provides:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

5

(3:04 CV 7051)

of the terms of that agreement or that Florida Lift would have needed prior approval to enter into an agreement with Toyota. No one from Florida Lift told Toyota that prior approval would be needed (Kastelic Dep. at 135-36, 137, 138) and such a contractual provision could not have been anticipated since it was not standard in the industry. (Roensch Dep. 23, 176-77; Kastelic Dep. at 91-91, 108-09, 111).

Plaintiff has not proven that Toyota had any more than a general belief that there probably was a Dealer Agreement between Crown and Florida Lift. Therefore, plaintiff cannot establish the requisite knowledge element of a tortious interference claim.

### b. Intentional Procurement of the Breach

Toyota next argues that Crown cannot establish that Toyota intentionally procured the breach of the Dealer Agreement by Florida Lift. In RFC Capital Corp. v. Earthlink, Inc., No. 03AP-735, 2004 WL 2980402, at *17 (Ohio App. Dec. 23, 2004) (citing Restatement (Second) of Torts § 766 cmt. j), the court noted that there are two ways to satisfy the intent element of a tortious interference claim: "(1) by proving that the defendant acted with the purpose or desire to interfere with the performance of the contract or (2) by proving that the defendant knew that interference was certain or substantially certain to occur as a result of its actions."

As already established, Toyota had no specific knowledge that failure to obtain Crown's prior approval for the Florida Lift/Toyota deal might constitute a breach by Florida Lift of its Dealer Agreement with Crown. Toyota approached Florida Lift on short notice because its existing Tampa dealer had filed for bankruptcy and Toyota needed to quickly find a new, reliable

6

(3:04 CV 7051)

dealer in the Tampa area in order to protect its commercial interests there.  There is no evidence that Toyota had any intention to interfere with Crown's contract with Florida Lift.  Further, given that Florida Lift distributed products for both Crown and Toyota in the Orlando area without incident, Toyota had no reason to believe there would be a problem with a similar arrangement in the Tampa area.  (Kastelic Dep. at 118-19; Roensch Dep. at 25-26).  Therefore, Toyota "could not know, much less intend, that its [actions] . . . would interfere with" Florida Lift's obligations under the Crown Dealer Agreement.  RFC Capital Corp., 2004 WL 2980402, at *17.  Nor could Toyota have perceived that interference with a contract was "certain or substantially certain to occur."  If there was a breach (and the Southern District of Ohio has determined that there was), Toyota did not induce or procure it.[6]

Crown makes the argument that, even if Toyota did not induce the original breach, there was some sort of "continuing breach" during the 60-day cure period and that Toyota is liable for inducing Florida Lift's continuing breach.  This argument has no merit.  In the first place, when Toyota learned that Crown was objecting to the agreement between Toyota and Florida Lift, Toyota agreed to release Florida Lift from any obligations with respect to their new agreement regarding the Tampa area.  (Basu Dep. at 38, 52-53, 63; Roensch Dep. at 323, 326).  It was only after Florida Lift insisted that it wanted to handle both Crown's and Toyota's product lines in the

---

[6] It is noteworthy that Ohio "does not recognize negligent interference with a business relationship."  Tiger, Inc. v. Time Warner Entertainment Co., L.P., 26 F.Supp.2d 1011, 1019 (N.D. Ohio 1998) (citing Smith v. Ameriflora, 644 N.E.2d 1038 (Ohio App. 1994)).

(3:04 CV 7051)

Tampa area that Toyota continued its involvement with Florida Lift and even offered financial assistance in the termination proceedings initiated by Crown.[7] (Basu Dep. at 52-53).

Even though the Southern District of Ohio has determined that Florida Lift did breach the Dealer Agreement it had with Crown, there is no proof that Toyota intentionally induced or procured that breach. Therefore, plaintiff has failed to establish this element of a tortious interference claim.

### c. Lack of Justification

The Ohio Supreme Court has stated that "[e]stablishment of the fourth element of the tort of tortious interference with contract, lack of justification, requires proof that the defendant's interference with another's contract was improper." Fred Siegel Co., L.P.A. v. Arter & Hadden, 707 N.E.2d 853 (Ohio 1999) Syllabus ¶ 2. "Thus, even if an actor's interference with another's contract causes damages to be suffered, that interference does not constitute a tort if the interference is justified." Id. at 858.

In determining whether an actor's conduct is improper or not, consideration is given to the following factors:

> (a) the nature of the actor's conduct,
> (b) the actor's motive,
> (c) the interests of the other with which the actor's conduct interferes,
> (d) the interests sought to be advanced by the actor,

---

[7] Toyota asserts that it was in its best interest to help Florida Lift in its efforts to prevent Crown from terminating the Crown/Florida Lift Dealer Agreement. Crown's business was vital to Florida Lift and Florida Lift was vital to Toyota, especially since its most recent dealer in the Tampa area had just declared bankruptcy. (Kastelic Dep. at 115-16; Fischer Dep. at 220-21).

8

(3:04 CV 7051)

    (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
    (f) the proximity or remoteness of the actor's conduct to the interference and
    (g) the relations between the parties.

Id. at 860.

In this case, both Toyota and Crown had a business relationship with Florida Lift in the Orlando area without incident. There is no evidence that Toyota's motive in approaching Florida Lift was to disrupt Crown's business in the Tampa area. In fact, given the history of the interrelatedness of these three entities in the Orlando area, Toyota had no reason to anticipate that there would be objection by Crown to a similar arrangement in the Tampa area. It was also reasonable for Toyota to approach a dealer it knew from Orlando when it suddenly needed to replace its Tampa dealer.

Furthermore where, as here, the contract is terminable at will,[8] the Restatement (2d) of Torts § 768 provides that a competitor is protected by privilege. Competition is privileged, and therefore proper, where:

> (a) the relation between the actor . . . and his or her competitor . . . concerns a matter involved in the competition between the actor and the other, and (b) the actor does not employ wrongful means, and (c) his action does not create or continue an unlawful restraint of trade, and (d) his purpose is at least in part to advance his interest in competing with the other.

Fred Siegel, 707 N.E.2d at 861.

---

[8] Florida Lift was free to terminate the contract without cause with 30 days written notice.

9

(3:04 CV 7051)

There is simply nothing in this record to show that Toyota acted improperly, i.e., lacked justification or privilege, when approaching Florida Lift to serve as its dealer in the Tampa area.

### III.  CONCLUSION

Construing the undisputed facts in the light most favorable to the plaintiff, the Court concludes that plaintiff has failed to establish the necessary elements of a tortious interference with contract claim.  Toyota is, therefore, entitled to summary judgment on this claim and the same shall be entered.

IT IS SO ORDERED.


  October 28, 2005                             *s/ David D. Dowd, Jr.*
Date                                           David D. Dowd, Jr.
                                               U.S. District Judge